UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
SHAWNELLE KING and JAHMIA
PHILLIPS,

                     Plaintiffs,

        -against-

Stage 29 Productions, LLC, a/k/a Inside-
Out Media, LLC,

                     Defendant.
-------------------------------------------------------

**Verified Complaint and
Demand for a Jury Trial**

**Docket No.**

**Preliminary Statement**

1.    Plaintiffs Shawnelle King (hereinafter, "King") and Jahmia Phillips (hereinafter, "Phillips") are both women, and both are of the African-American race and of Black color. They bring this action against Defendant Stage 29 Productions, LLC, a/k/a Inside-Out Media, LLC (hereinafter, "Stage 29"), their former employer, to challenge Stage 29's discrimination against them, including its discriminatory termination of each of them, Stage 29's subjection of each of them to working in an environment that was hostile to them on the basis of their gender (female), their race (African-American), and their color (Black) and the employer's retaliation against Phillips because she complained of discrimination. Defendant Stage 29 has discriminated against both Plaintiffs on the basis of their race (African-American), color (Black), and gender (female), and retaliated against the Plaintiffs in violation of Title VII of the Civil Rights Act of 1964, as amended (hereinafter, "Title VII"), the New York City Human Rights Law (hereinafter, "NYC HRL"), and the New York State Human Rights Law

1

(hereinafter, "NYS HRL"). Stage 29 has discriminated against Plaintiffs on the basis of their race (African-American) and color (Black) and denied them their right to make and enforce contracts for employment with Stage 29, has subjected them to working in a work environment that was hostile to them on the basis of their race and color, and terminated their employment on the basis of their race and color in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. Stage 29 also failed to provide Plaintiffs with their pay information, as required under New York Labor Law § 195.1

2. Stage 29 has engaged in a pattern and practice of discrimination on the basis of race, color, and gender against both Plaintiffs and against others similarly situated to them, has subjected both Plaintiffs and others similarly situated to them to working in an environment that is hostile on the basis of gender (female), race (African-American), and color (Black), and has retaliated against Phillips and other employees who complained of discrimination, has denied to both Plaintiffs and to others similarly situated to them the same terms, conditions, and privileges of employment as it granted to men, to white employees and/or to employees who are not of the African-American race and Black color, and/or to employees who had not complained of discrimination. Defendant Stage 29 also violated the rights of both Plaintiffs and of other similarly situated employees to make and enforce contracts on the same basis as white persons.

**Parties**

3. Plaintiff Shawnelle King is a woman of the African-American race and Black color. She is a citizen of the United States. She was employed by Stage 29 as

2

Production Manager, from on or about July 5, 2017, until Stage 29 fired her on or about October 6, 2017.

4. Plaintiff Jahmia Phillips is a woman of the African-American race and Black color. She is a citizen of the United States. She was employed by Stage 29 as a Junior Associate Producer, from on or about June 26, 2017, until Stage 29 fired her on or about December 12, 2017.

5. Defendant Stage 29 Productions, LLC, a/k/a Inside-Out Media, LLC, is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 137 North Larchmont Boulevard, No. 705, Los Angeles, California 90004. In its most recent Statement of Information, filed with the Secretary of State of the State of California, Stage 29 is described as a "film production company." On information and belief, Stage 29 has over 400 employees. Plaintiffs were both hired to work on Stage 29's Daily Mail TV Series, which began broadcasting on or about September 18, 2017, and continues to be broadcast to the present time. The show is produced in New York County.

**Administrative Procedure**

6. King and Phillips timely filed a joint complaint of race, color, and gender discrimination, hostile work environment, and retaliation against Stage 29 with the United States Equal Employment Opportunity Commission (hereinafter, "EEOC") on July 20, 2018. The EEOC issued a right to sue letter to the Plaintiffs dated August 1, 2019, which was received in the office of counsel for Plaintiffs on August 5, 2019. This case will be timely filed in this Court on October 15, 2019.

## Jurisdiction and Venue

7. This honorable Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. This honorable Court also has supplemental jurisdiction over the state and city causes of action pursuant to 28 U.S.C. § 1367 and the doctrine of pendent jurisdiction. Venue lies in this District as Stage 29 has offices and film production facilities in this District, both Plaintiffs were hired, employed, and fired by Stage 29 in this District, Plaintiff King resides in this District and, on information and belief, the employment records of both Plaintiffs are located in this District.

## Statement of Facts

8. Stage 29 hired Phillips as a Junior Associate Producer on or about June 29, 2017, to work on the new Daily Mail TV show. Phillips was one of three Junior Associate Producers; the other two were of the Caucasian race and of White color. From the beginning of her employment, Stage 29 told Phillips and other similarly situated employees that they could expect a substantial pay raise in the New Year, that is, in January 2018. Phillips was involuntarily terminated on or about December 12, 2017, just three weeks before the anticipated raise. She was the only Junior Associate Producer to be terminated; Stage 29 retained two male Caucasian employees who had the same position.

9. On or about July 5, 2017, Stage 29 hired King as Production Manager to work on the new Daily Mail TV show. King was the first Production Manager of the show. Stage 29 terminated King involuntarily on or about October 6, 2017.

10. Both King and Phillips were highly qualified to perform their work in the television production field.

11. King came to Stage 29 with over 15 years of production experience, including 10 years with ABC News in New York City. King started out at ABC as Associate Producer supporting all ABC platforms and was promoted to Producer of Operations within three years.[1] She had also worked as a writer, director, field producer, and editor for a variety of projects. She has a Bachelor of Arts in Mass Communications from St. Augustine's University and a Master of Science from Florida A & M University in Broadcast Journalism. One of her documentaries, "Taking the Plunge," about how to conquer fear of swimming, debuted at the British Urban Film Festival in the United Kingdom, was featured at the World Aquatic Health Conference, and won several awards. She has an exceptional reputation in the industry, and has received a number of awards, including the 2012 Peabody Award for "Superstorm Sandy" coverage at ABC News, the 2014 Edward R. Murrow Award from the Radio and Television Digital News Association, and the 2013-2014 Daytime Entertainment Emmy award certificate for her contributions to "Good Morning America."

12. Phillips, too, was well qualified for the position of Junior Associate Producer. She holds a Bachelor of Arts in Journalism from Long Island University-Brooklyn, which she received in 2016. Phillips's experience is both on the production side and the editorial side. She worked as an intern at ABC 20/20 while still in school, and when she graduated in May 2016 she was promoted to Production Assistant and

---

[1] It should be noted that King left her 10-year career at ABC News for the chance to work on the new Daily Mail TV show with Stage 29. The "Deal Memorandum" that Stage 29 provided to King set forth 21 months of employment, but she was fired after 14 weeks.

5

worked at ABC 20/20 for another 10 months. In early 2017, she began working for Rock n' Robin Productions[2] and held the title of Junior Associate Producer, working on two WebMD series. In May and June 2017 she returned to ABC 20/20 as a free-lancer to work on a project about Watergate. Very soon thereafter, Stage 29 hired Phillips for a full-time position as a Junior Associate Producer.

13. Both King and Phillips reported to supervisors of the Caucasian race and White color. Both King and Phillips performed their work competently, and received positive feedback regarding their work.

14. Both King and Phillips were hired to perform, and did perform, production work on the Daily Mail TV show, and neither of them had creative decision-making input. King managed production while Phillips provided support for the senior editorial team and also did some field production work.

15. The Daily Mail TV show premiered in September 2017, while King was working as the Production Manager for the show. The show premiered as syndication's top-rated rookie magazine show, and as the highest rated debut of a nationally cleared magazine since Warner Bros.' *TMZ* in 2007, as reported in *Broadcasting & Cable*.

16. Rich de Michele, the Executive in Charge, a man of the Caucasian race and of White color, terminated King, in the presence of Meghan Fulton, the Line Producer and King's supervisor, who is also of the Caucasian race and of White color. Mr. de Michele told King, in sum and substance, "We are going to let you go; we are going in *a different direction creatively.*" (Italics added). De Michele terminated King

---

[2] This production company, which makes documentaries, is owned by Robin Roberts, a host on Good Morning America.

6

just three days after the no. 1 syndication ranking of the show was reported in *Broadcasting & Cable.*

17. Two months later, on or about December 12, 2017, Stage 29 also fired Phillips. Max Strauss, the Executive Producer, a man of the Caucasian race and White color, in the presence of Meghan Fulton, told Phillips in sum and substance that she could no longer work for Stage 29 because, "We are going in *a different creative direction."* (Italics added)

18. Both Plaintiffs have observed that throughout its existence, and to date, the Daily Mail TV show has not changed its creative direction. Although neither King nor Phillips had any creative input into Stage 29's work, they were both fired on the same pretext: that the Daily Mail TV show was going in a different creative direction. Not only were King and Phillips fired on this pretext, as set forth below at paragraphs 21 and 22, Stage 29 replaced both King and Phillips with men of the Caucasian race and of White color.

19. Phillips was humiliated by Stage 29 and subjected by the employer to working in a hostile work environment:

> (a) When Phillips submitted a photograph of herself for the company directory, she was described as having "horns" because of her afro-centric hairstyle and the photograph was rejected. On information and belief, no white person's photograph was denigrated.
>
> (b) Phillips complained to Andrea D'Ambrosio, a Caucasian supervisor of White color to whom Phillips reported, that Daily Mail TV's coverage of Woah Vicky[3] was racist. In response to Phillips's complaint of racism, Stage 29 inexplicably removed all production workers of the Caucasian race and White color from working on the Woah Vicky segments and only assigned production workers of the African-American race and Black

---

[3] "Woah Vicky" was a blonde, white-skinned teenager who presented herself as an African-American on Instagram.

7

color, including Phillips, to work on the material. Phillips suffered emotionally from performing this work. Instead of removing Phillips from this work when she complained that it was racist and offensive, Stage 29 summarily fired her, after Phillips had spent long, intensive working hours on material that was abhorrent to her.

Thus, Stage 29 also terminated Phillips, in part, in retaliation for her complaint of race discrimination.

20. Stage 29 also humiliated, denigrated, and subjected King to working in a hostile work environment based on her race and color:

(a) King's supervisor Meghan Fulton intentionally and repeatedly required King to perform menial, nonprofessional cleaning tasks, such as, to vacuum hallways, wipe down office furniture, vacuum window curtains inside the host's dressing room, and set up office furniture. Such menial tasks were not assigned to persons of the Caucasian race and White color who held management positions, such as King's position as Production Manager.

(b) Although King asked Fulton for a job description, Fulton told her that she would never receive one. On information and belief, Caucasian/White employees at the same level as King did receive job descriptions. When Stage 29 hired King, it had been in business for approximately 14 years and had human resources procedures in place.

(c) Similarly, on information and belief, Meghan Fulton planned for King's termination by repeatedly requiring King to write out the specific step-by-step details of the procedures that King had set in place to ensure the delivery of daily live remotes from around the world and on the White House grounds in Washington, DC. When King came to work for Stage 29, no broadcast logistical operations were set up for the Daily Mail TV show. King coordinated the broadcast operational setup for global live remotes, which included daily or weekly live shots from Australia, London, California and other U.S. locations, Canada, Europe, etc. King used her extensive connections in the global TV industry and her personal and business relationships to create and obtain efficient, effective broadcast operations for Daily Mail TV. The process was challenging because Daily Mail TV was a brand new five-day a week syndicated news talk show that was being developed from scratch. Fulton justified the requirement for detailed information—with which King complied—by saying to King that this information would be needed in the event that King was out sick or away on vacation. However, when King asked Fulton to have Production Coordinator AJ Cataldi, a man of the Caucasian

race and White color, provide his procedures/network teams that he used for securing various field production crews for such times as he would be out of the office and unable to perform these duties, which would then fall on King, the information was never shared with King. Stage 29 discriminated against King by treating her differently and worse than it treated Cataldi: King was required to provide detailed information while Cataldi was not, and Mr. Cataldi kept his job, but King was fired. Additionally, the information that King provided was used to more closely scrutinize King's work, while Cataldi's work was not scrutinized closely. Significantly, Cataldi, whose position was subordinate to King's position, was advised of the plan to fire King in advance of her firing.

21. Stage 29 replaced King with a new hire, Daniel Glantz, a man of the Caucasian race and White color. Mr. Glantz was far less qualified for the position than King is, as reported on his LinkedIn career profile. He has a Bachelor of Arts in Marketing and Sports Management, which is relatively unrelated to the work of Production Manager, while King has a Bachelor of Arts in Mass Communications and a Master of Science in Broadcast Journalism, both highly related to the position. King had over 15 years of experience in television production work, while Glantz had only four years.

22. As with its discriminatory firing of King, Stage 29 chose to fire Phillips and to retain a newly promoted male, Eric Schulkin, who is a man of the Caucasian race and White color. According to his LinkedIn profile, Schulkin was less qualified for the job than Phillips, as he has a degree in History, Media & Communications from Muhlenberg College, with relatively little course work in media and communications, while Phillips has a Bachelor of Arts in Journalism. Additionally, Phillips had had significant editorial experience and longevity at a television network, including working as a Junior Associate Producer at Rock n' Robin Productions before she came to Stage

29, while Schulkin had had a number of short-term positions doing solely production assistant work.

23. After Stage 29 fired her, King searched actively for a job for more than a year before finding a full-time position in November 2018. As a result of being fired abruptly, and without any prior warning, and as a result of having been out-of-work for over a year, King has suffered in body, mind, and soul. Being fired by Stage 29 was the first time that King ever lost a job, and she has experienced episodes of post-traumatic stress disorder since she was fired, with depression, panic attacks, and anxiety on a daily basis. She has undergone grief because of the loss of the job at Daily Mail TV, a job she loved, and humiliation and shame because she was fired. She has also suffered and continues to suffer from insomnia, headaches, hair loss, twitching eyelids, hand tremors, weight gain, indigestion, and isolation and an inability to connect with friends.

24. Like King, Phillips suffered the first firing of her life when Stage 29 abruptly terminated her, and, she had suffered greatly before she was fired from having to work on the racist Woah Vicky segments. Phillips became depressed and anxious. She felt and feels humiliated. Her termination affected her financially, and prevented Phillips from being able to pay for the medications that she needed, and further caused Phillips's physical and emotional health to deteriorate. Finally, Phillips experienced great anger because she knew that she had been fired under the pretense that the Daily Mail TV show had changed its creative direction, when in fact that claim was merely a ploy to justify her discriminatory and retaliatory firing.

25. Throughout their employment by Stage 29, neither King nor Phillips received any indication from Stage 29 that their work was defective in any respect.

10

Rather, Stage 29 subjected King and Phillips to working in a hostile work environment and fired King and Phillips solely because of their gender (Female), and/or their race (African-American), and/or their color (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, as amended, the NYC HRL, and the NYS HRL. Additionally, Stage 29 fired Phillips in retaliation for her complaining of discrimination, also in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, as amended, the NYC HRL, and the NYS HRL.

26. Throughout their employment with Defendant Stage 29 Productions, both Plaintiffs worked on the Daily Mail TV show, which was and is filmed at PIX 11 in Manhattan. When they began working for Stage 29, the employer emailed various documents, including contracts, for their signature, and each Plaintiff signed all the documents that the employer provided to her. A Stage 29 representative did not sign and return copies of any of the contracts or other documents that the Plaintiffs signed.

27. Among the documents Plaintiffs each signed were one or more documents that purported to be employment contracts. King signed two contracts regarding arbitration: one contract ("Deal Memorandum") provided for arbitration of disputes at JAMS in New York County under New York law and federal law; the other contradictory contract provided for arbitration of disputes at JAMS in Los Angeles County under California law and federal law. Phillips signed a contract that provided for arbitration of disputes at JAMS in Los Angeles County under California law and federal law. Neither Plaintiff lived or worked in California when the contracts were signed by them nor throughout the time of each Plaintiff's employment by Stage 29

11

28. All three of the contracts calling for arbitration include a provision that shortens applicable statutes of limitation to one year and a provision that denies Plaintiffs any punitive damages. Both provisions run directly counter to the provisions of Standard 1 of the Minimum Standards of Procedural Fairness of the JAMS Policy on Employment Arbitration, which states:

> **Standard No. 1: All Remedies Available**
>
> All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, as well as statutes of limitations, must remain available in the arbitration. Post-arbitration remedies, if any, must remain available to an employee.[4]

Additionally, the JAMS policy provides that JAMS will not arbitrate pursuant to an employment contract that does not meet the requirements of its Standard 1:

> If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards of Procedural Fairness for Employment Arbitration.

Stage 29's shortening of the statutes of limitations to one year and denying Plaintiffs the ability to receive punitive (exemplary) damages may prevent JAMS from conducting an arbitration of this case.

29. All three of the contracts calling for arbitration also provided that arbitration would occur in the event that the parties had not been able to resolve any dispute "informally." Plaintiffs are aware of the Southern District's Alternative Dispute Resolution program of mediation, which provides for early mediation and does not require any party to pay any fees in order to participate in the program. Plaintiffs hope

---

[4] As stated in Stage 29's arbitration contracts, the JAMS "Arbitration Rules are publicly available for review at www.jamsadr.com/rules-clauses/." Both of the provisions quoted herein at paragraph 28 are set forth in that website.

12

that the parties can resolve this case informally through that program, and thereby avoid both litigation and arbitration.

### First Cause of Action

30. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-29, above, as if fully set forth herein.

31. Defendant Stage 29 has discriminated against Plaintiffs on the basis of their race (African-American) and color (Black) and their gender (female), has subjected them to working in a work environment that is hostile to them on the basis of their race, color, and gender, and has retaliated against them for complaining of discrimination and/or opposing discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

### Second Cause of Action

32. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-31, above, as if fully set forth herein.

33. Defendant Stage 29 has discriminated against Plaintiffs on the basis of their race (African-American) and color (Black) and their gender (female), has subjected them to working in a work environment that is hostile to them on the basis of their race, color, and gender, and has retaliated against them for complaining of discrimination and/or opposing discrimination in violation of the New York City Human Rights Law, Admin. Code of the City of New York, § 8-101, *et seq*

### Third Cause of Action

34. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-33, above, as if fully set forth herein.

35. Defendant Stage 29 has discriminated against Plaintiffs on the basis of their race (African-American) and color (Black) and their gender (female), has subjected them to working in a work environment that is hostile to them on the basis of their race, color, and gender, and has retaliated against them for complaining of discrimination and/or opposing discrimination in violation of the New York State Human Rights Law, Executive Law § 296, *et seq.*

### Fourth Cause of Action

36. Plaintiffs repeat and reallege the allegations contains in paragraphs 1-35, above, as if fully set forth herein.

37. Defendant Stage 29 has discriminated against Plaintiffs on the basis of their race (African-American) and color (Black), has subjected them to working in a work environment that was hostile to them on the basis of their race and color, denied Plaintiffs their right to make and enforce employment contracts that are equal to the contracts that Defendant Stage 29 grants to white employees, and terminated their employment on the basis of their race and color in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

### Fifth Cause of Action

38. Plaintiffs repeat and reallege the allegations contained in paragraphs 1-37, above, as if fully set forth herein.

39. Defendant has failed to provide Plaintiffs with the information an employer is required to provide to its each of its employees pursuant to New York Labor Law 195.1.

**Prayer for Relief**

Plaintiffs seek the following relief:

1. An order requiring the parties to participate in the Mediation Program of the Court.

2. A declaratory judgment finding that: (a) Defendant Stage 29 discriminated against Plaintiffs because of their race, color, and gender, and retaliated against them for complaining of discrimination and for opposing discrimination; and (b) Defendant Stage 29 has a custom and policy of denying Black employees the same employment contracts that it provides to its white employees.

3. An injunction requiring Defendant Stage 29 to cease its discrimination and retaliation against Plaintiffs and its discrimination against other persons of the African-American race, other persons of Black color, and other women.

4. An order requiring Defendant Stage 29 to reinstate King to the position of Production Manager effective October 6, 2017, and to reinstate Phillips to the position of Junior Assistant Producer effective December 12, 2017.

5. An order requiring Defendant Stage 29 to pay King back pay, including the salary and all the fringe benefits, including pension contributions, that she lost as a result of Stage 29 terminating her from that position on or about October 6, 2017.

6. An order requiring Defendant Stage 29 to pay Phillips back pay, including all salary and fringe benefits, including pension contributions, that she lost as a result of being terminated from that position on or about December 12, 2017.

7. An order requiring Defendant Stage 29 to pay to King and Phillips compensatory damages, including but not limited to back pay, front pay, and monies for their physical and emotional pain and suffering.

8. An order requiring Defendant Stage 29 to pay King and Phillips pre-judgment interest.

9. An order requiring Defendant Stage 29 to make King and Phillips whole as to the increased income taxes for which each will be liable as a result of receiving back pay, front pay, and fringe benefits from several years in one tax year.

10. An order requiring Defendant Stage 29 to pay King and Phillips liquidated damages.

11. An order requiring Defendant Stage 29 to pay King and Phillips punitive damages.

12. An order requiring Defendant Stage 29 to pay to King and Phillips Disgorgement of profits received as a result of unlawful discrimination.

13. An order requiring Defendant Stage 29 to pay King and Phillips the costs of this litigation.

14. An order requiring Defendant Stage 29 to pay King and Phillips their reasonable counsel fees and expert fees.

15. An order requiring Defendant Stage 29 to provide effective annual training over a period of five years to Jay McGraw and any other of its Members or owners, to all its executives, directors, managers, and supervisors, to all of its employees in its Human

Resources Department (or equivalent department), regarding Defendant Stage 29's obligations toward its employees pursuant to Title VII, 42 U.S.C. § 1981, the NYC HRL, and the NYS HRL to avoid and remedy discrimination, retaliation, race-based harassment, color-based harassment, and sex-based harassment and to avoid the creation and/or maintenance of hostile work environments.

16. Such other and further relief as this honorable Court may deem just and proper.

Dated: New York, New York
October 16, 2019

Phyllis Gelman & Associates, LLC

By /s/Phyllis Gelman
Phyllis Gelman, Esq. (PG 9012)
Katrina M. Jones, Esq.
Phyllis Gelman & Associates, LLC
225 Broadway, Suite 3110
New York, New York 10007
Tel. (212) 557-0559
Fax. (212) 964-4360
pg@gelmanlawoffice.com
Attorneys for Plaintiffs

**Declaration of Plaintiff Shawnelle King**

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 16, 2019.

Shawnelle King

17

**Declaration of Plaintiff Jahmia Phillips**

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 15, 2019.

*/s/ Jahmia Phillips*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
SHAWNELLE KING and JAHMIA
PHILLIPS,

       Plaintiffs,      **Demand for a Jury Trial**

    -against-        **Docket No.**

**Stage 29 Productions, LLC, a/k/a Inside-Out Media, LLC,**

       Defendant.
-----------------------------------------------------------

  Now come Plaintiffs Shawnelle King and Jahmia Phillips and by Phyllis Gelman & Associates, LLC, their attorneys, hereby demand a trial by jury.

Dated: New York, New York
   October 15, 2019

            Phyllis Gelman & Associates, LLC


            By /s/Phyllis Gelman
              Phyllis Gelman, Esq. (PG 9012)
              Katrina M. Jones, Esq.
              Phyllis Gelman & Associates, LLC
              225 Broadway, Suite 3110
              New York, New York 10007
              Tel. (212) 557-0559
              Fax. (212) 964-4360
              pg@gelmanlawoffice.com
              Attorneys for Plaintiffs