UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWNELLE KING and JAHMIA PHILLIPS,<br><br>  Plaintiffs,<br><br>v.<br><br>STAGE 29 PRODUCTIONS, LLC, a/k/a Inside-Out-Media, LLC,<br><br>  Defendant. | **Civil Action No.:**<br>**19-cv-9549** |

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

McMahon, CJ:

On October 16, 2019, Plaintiffs Shawnelle King and Jahmia Phillips ("Plaintiffs") brought this joint action against their former employer, Defendant Stage 29 Productions, LLC, also known as Inside-Out-Media, LLC, ("Defendant"). The Complaint alleges discrimination on the basis of race, color, and gender, subjection to a hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, and New York City Human Rights Law. Plaintiffs additionally claim that Defendant failed to comply with the wage notice requirement under New York Labor Law.

Upon hire, Plaintiffs signed employment contracts containing binding arbitration clauses ("the Agreements"). Defendant, invoking these arbitration provisions, filed a motion on March 4th, 2020 to stay this action and compel arbitration pursuant to section 4 of the Federal Arbitration Agreement ("the FAA"). In opposition, Plaintiffs cross-motioned to stay any arbitration order and instead compel participation in the Southern District's Mediation Program pursuant to Local Rule 83.9. In support of their cross-motion, Plaintiffs contend that

1

Defendant failed to engage in informal dispute resolution before proceeding to arbitration as required by the Agreements.

Defendant's motion is GRANTED and Plaintiffs' cross-motion is DENIED.

## BACKGROUND

### I. The Parties

Plaintiff King ("King") is an African American woman with over 15 years of production experience. (V. Compl. and Demand for a Jury Trial, Dkt. No. 1 at 2, 5 (hereinafter, "Complaint")). She was hired by Defendant as Production Manager for the Daily Mail TV Show on July 5, 2017 and subsequently fired on October 6, 2017. (*Id.* at 2.)

Plaintiff Phillips ("Phillips") is an African American woman with production and editorial experience. She was hired by Defendant as a Junior Associate Producer for the Daily Mail TV Show on June 26, 2017 and fired on December 12, 2017. (*Id.* at 2, 5.)

Defendant is a film production company that develops programming for CBS Television Studios. (Mem. of L. in Supp. of Def.'s Mot. to Compel Arb. And Stay This Action, Dkt. No. 14 at 2 (hereinafter, "Def.'s Mot.")). It's show, Daily Mail TV Show, was first broadcast on September 18, 2017 and is produced in New York County. (Pls.' Mem. of L. in Supp. of Their Cross-mot. for Mediation and to Stay Arb., Dkt. No. 24 at 2 (hereinafter, "Pls.' Cross-mot.")).

### II. Plaintiffs' Employment Agreements

On June 1st, 2017, King signed an employment contract with Defendant. (Decl. of Richard de Michele, Dkt. No. 13, Ex. A at 1 (hereinafter, "Michele Decl.")). Phillips entered into a similar employment agreement with Defendant on June 29th, 2017. (*Id.*, Ex. B at 1.) As a condition of their employment, Plaintiffs both agreed that "in the event that any Dispute

2

[could] not be resolved informally,"[1] they would submit any "controversies, claims or disputes arising out of or related to [their] Agreement[s], or the interpretation, performance, or breach thereof" against Defendant to the Office of JAMS, including:

> alleged violations of state or federal statutory or common law rights or duties, the allocation of the arbitrator's fee and the arbitration service fees among the parties, the enforcement or scope of this agreement to arbitrate or the arbitrability of such controversies, claims or disputes, including but not limited to any claim of waiver . . . .

(*Id.*, Ex. A at 10; *see id.*, Ex. B at 5.) The agreement further specifies that, depending on the amount in controversy, arbitration will be initiated and conducted according to the JAMS Streamlined Arbitration Rules, Comprehensive Arbitration Rules, or Employment Arbitration Rules. (*Id.*, Ex. A at 10; *id.*, Ex. B at 5.)

The only differences between the agreements are found in the locations designated for arbitration and choice of law provisions. The King Agreement assigns the New York office of JAMS as the arbitration venue and specifies that while New York substantive law governs disputes arising from the agreements, FAA substantive law governs the interpretation and enforcement of the dispute resolution provision. (*Id.*, Ex. A at 10, 11.)

On the other hand, the Phillips Agreement states that arbitration would occur in the Los Angeles office of JAMS and be governed by California law. (*Id.*, Ex. B at 5.) However, Defendant waives the clause in the Phillips Agreement requiring arbitration in Los Angeles and instead, agrees to arbitrate at the New York JAMS office under applicable law as determined by the arbitrator. (*Id.* at 4.)

### III.   Procedural History

---

[1] *See* Dkt. No. 13, Michele Decl., Ex. A at 10 ("In the event any Dispute cannot be resolved informally, Stage 29 and Artist mutually consent to submit any such Dispute that either Artist may have against Stage 29 or Stage 29 may have against Artist to final and binding arbitration."); *Id.*, Ex. B at 5 ("In the event the parties hereto are unable to resolve any Dispute informally, then such Dispute will be submitted to final and binding arbitration.").

3

Plaintiffs filed a joint complaint with the United States Equal Employment Opportunity Commission ("EEOC") on July 20, 2018 alleging claims against Defendant of discrimination on the basis of race, color and gender, subjection to a hostile work environment, and retaliation. (Dkt. No. 1, Complaint at 3.) On August 1st, 2019, they received a right to sue letter from the EEOC which led them to file this action in this Court on October 15, 2019. *Id.* The Complaint asserts claims against Defendant of violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Human Rights Law, and New York City Human Rights Law. (*Id.* at 13-15.) Plaintiffs further assert that Defendant violated New York Labor Law 195.1 by failing to comply with the wage notice requirement. (*Id.* at 15.)

Additionally, Plaintiffs allege that they sent Defendant a written demand for informal negotiations which was rejected without a counteroffer. (Dkt. No. 24, Pls.' Cross-mot. at 6; J. Decl. of Pls.' in Supp. of Their Cross-Mot. for Mediation and to Stay Arb., Dkt. No. 23, at 2 (hereinafter, "Pls.' Decl.")).[2]

On March 4th, 2020, Defendant moved to stay this case and compel arbitration, invoking Section 4 of the FAA. (Dkt. No. 14, Def.'s Mot. at 2.) Defendant argues that (1) both parties agreed to a delegation provision which assigns the question of arbitrability to the arbitrator, (2) this dispute falls within the scope of the arbitration agreement and the claims are arbitrable, and (3) the arbitration agreements cannot be invalidated by any contractual defenses. (*Id.* at 1-2.)

In opposition, Plaintiffs filed a cross-motion on May 31st, 2020 to stay arbitration and compel mediation pursuant to Local Rule 83.9. (Dkt. No. 24, Pls.'s Cross-mot. at 3.) Plaintiffs contend that this Court should order the parties to participate in the Southern District's Mediation Program because Defendant allegedly failed to engage in informal dispute resolution prior to arbitration as required by the Agreements. *Id.*

---

[2] Dkt. No. 23, Pls.' Decl., was signed by Plaintiff Phillips but not by Plaintiff King.

**DISCUSSION**

I.  **Applicable Law**

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Embodying "the liberal federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit] often and emphatically applied."). "A party has 'refused to arbitrate' within the meaning of Section 4 of the FAA if it 'commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so.'" *Morelli v. Alters*, No. 1:19-CV-10707-GHW, 2020 WL 1285513, at *7 (S.D.N.Y. Mar. 18, 2020) (quoting *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d. 194, 198 (2d Cir. 2004)).

It is well settled that "arbitration is a matter of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Id.* at 527. Accordingly, a party cannot be required to arbitrate issues that it has not agreed to arbitrate. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

When deciding whether to compel arbitration under the FAA, courts typically evaluate the following factors:

> (1) whether the parties agreed to arbitrate; (2) if so, the scope of that agreement; (3) if any federal statutory claims are asserted, whether Congress intended for those claims to be nonarbitrable; and (4) if some, but not all, claims are subject

to arbitration, whether to stay the balance of the proceedings pending arbitration.

*Begonja v. Vornado Realty Tr.,* 159 F. Supp. 3d 402, 408-09 (S.D.N.Y. 2016) (citing *Guyden v. Aetna, Inc.,* 544 F.3d. 376, 382 (2d Cir. 2008)).

Though New York law governs the King Agreement and California law governs the Phillips Agreement, (dkt. no. 13, Michele Decl, Ex. A at 11; *id.*, Ex. B at 5), "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)).

## II. The Parties Are Ordered to Arbitration

By signing their employment contracts and agreeing to the unambiguous arbitration clauses therein, Plaintiffs consented to arbitrate any and all disputes arising out of their employment with Defendant. The broadly worded arbitration agreements squarely encompass Plaintiffs' claims and delegate all questions of arbitrability, including whether mediation was required prior to arbitration, to an arbitrator. Moreover, Congress did not intend employment discrimination claims brought under Title VII to be nonarbitrable. Thus, the parties to this action are ordered to arbitration.

### A. *Whether the Parties Agreed to Arbitrate*

First, this Court must determine whether the King and Phillips employment contracts contain valid arbitration agreements. *Schein*, 139 S. Ct. at 530 (citing 9 U.S.C. § 2) ("before referring a dispute to an arbitrator, the court must determine whether a valid arbitration agreement exists."). If this Court determines "that [the] arbitration agreement[s] [are] valid and the claim[s] before it [are] arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.,* No. 08 CV. 5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009); *see also Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24

("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.").

Both contracts contain straightforward arbitration agreements. *See Morelli*, 2020 WL 1285513, at *8 (finding an arbitration clause to be an "unambiguous agreement to arbitrate" because it provides that parties must "submit 'any dispute' to arbitration"). Plaintiffs neither challenge the validity of the Agreements, nor raise any contractual defenses. In fact, Plaintiffs concede that they were aware of and agreed to the arbitration clauses when executing their employment contracts and are bound by the provisions. (Dkt. No. 23, Pls.' Decl. at 2) ("We are aware that our employment contracts with Stage 29 require informal negotiations between the parties before arbitration.").

The Parties have unequivocally agreed to arbitrate.

B.  The Scope of the Arbitration Agreements

Sections 27 of the King Agreement and 16 of the Phillips Agreement both broadly state that parties must submit "any and all controversies, claims or disputes arising out of or related to this agreement or the interpretation, performance or breach thereof" to arbitration. (Dkt. No. 13, Michele Decl, Ex. A at 10; *id.*, Ex. B at 5.) Because the state and federal claims Plaintiffs raise in this action directly "arise out of" and are "related" to their employment agreements, they fall squarely within the scope of the arbitration provisions contained therein. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25 ("The Arbitration Act establishes that . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

Further, like arbitration provisions generally, threshold questions of arbitrability are a matter of contract. *Schein*, 139 S. Ct. at 529 (citing *Rent-A-Ctr.*, 561 U.S. at 70) ("An agreement to argue a gateway issue is simply an antecedent agreement . . . and the FAA operates on this additional arbitration agreement just as it does on any other."). Therefore,

when "the parties' contract delegates arbitrability to an arbitrator, a court may not override the contract," *id.*, so long as the agreement does so by "clear and unmistakable evidence." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *accord Rent-A-Ctr.,* 561 U.S. at 79 (quoting *AT&T Techs.,* 475 U.S. at 649).

Here, the question of arbitrability was clearly delegated to the arbitrator. Both Agreements require parties to submit claims regarding "the enforcement or scope of this agreement to arbitrate or the arbitrability of such controversies, claims or disputes" to binding arbitration at the office of JAMS pursuant to JAMS Arbitration Rules. (Dkt. No. 13, Michele Decl, Ex. A at 10; *id.*, Ex. B at 5.) Rule 8 of the JAMS Streamlined Arbitration Rules, Rule 11 of the JAMS Comprehensive Arbitration Rules, and Rule 11 of the JAMS Employment Arbitration Rules all explain that "The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." (JAMS, Streamlined Arbitration Rules and Procedures 8(b); JAMS, Comprehensive Arbitration Rules and Procedures 11(b); JAMS, Employment Arbitration Rules and Procedures 11(b).) That the parties' consented to the incorporation of JAMS Rules in the Agreements "serves as clear and unmistakable evidence that [the parties] agreed to delegate any questions of arbitrability to the arbitrator." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 105 (S.D.N.Y. 2017). Thus, the question of whether the disputes raised by Plaintiffs are arbitrable is to be decided by an arbitrator.

Plaintiffs do not dispute the existence or validity of this delegation provision. Rather, they contend that this Court should compel mediation pursuant to Local Rule 83.9 despite the unambiguous delegation clause. (Dkt. No. 24, Pls.' Mem. at 5.) Pointing to Sections 27(a) of the King Agreement and 16(a) of the Phillips agreement, Plaintiffs argue that Defendant failed to engage in informal dispute resolution prior to arbitration as was required by the contracts. *Id.* at 6. Therefore, Plaintiffs contend that the Southern District's Mediation Program is the appropriate mechanism to resolve their claims at this stage. *Id.* at 6–7.

8

Plaintiffs appear to construe the Agreements' informal dispute resolution provision as a condition precedent to arbitrability. *See Utica Mut. Ins. Co. v. Clearwater Ins. Co.,* 906 F.3d 12, 22 (2d Cir. 2018) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)) ("A condition precedent is 'an act or event' other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."). However, because condition precedents "determine *when* the contractual duty to arbitrate arises," whether a condition precedent has been satisfied is a question of "procedural arbitrability." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 35 (2014).

The Supreme Court has stated that "issues of procedural arbitrability, *i.e.*, whether . . . conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (citing Revised Uniform Arbitration Act of 2000 § 6I, comment 2, 7 U.L.A., at 13) (emphasis and ellipsis omitted); *see also BG Grp.,* 572 U.S. at 35 ("courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration."). Thus, it is for an arbitrator to determine whether the parties here must participate in mediation prior to arbitration.

C. *Whether Congress Intended for the Federal Claims Raised by Plaintiffs to be Nonarbitrable*

Finally, Congress did not intend for the federal claims raised by Plaintiffs to be nonarbitrable. Indeed, the Supreme Court has explicitly held that federal discrimination claims are arbitrable under the FAA. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (holding discrimination claims under the Age Discrimination in Employment Act to be arbitrable); *see Prudential Ins. Co. of Am. v. Lai,* 42 F.3d 1299, 1303 (9th Cir. 1994) (citing *Gilmer*, 500 U.S. at 26) ("extend[ing] *Gilmer* . . . to employment discrimination claims

brought under Title VII"); *Maye v. Smith Barney Inc.,* 897 F. Supp. 100, 109 (S.D.N.Y. 1995) (citing *Hall v. MetLife Resources,* No. 94 Civ. 0358 (JFK), 1995 WL 258061, at *3 (S.D.N.Y. May 3, 1995)) ("It is well established by courts in the Second Circuit that Title VII claims are arbitrable."). Thus, this final factor also weighs in favor of compelling arbitration in the present action.

## CONCLUSION

For the reasons discussed above, Defendant's motion to compel arbitration and stay the immediate action is GRANTED and these proceedings are stayed under 9 U.S.C. § 3.

Plaintiffs' cross-motion to stay arbitration and compel mediation pursuant to Local Rule 83.9 is DENIED.

The Clerk of Court is directed to remove the motions at Docket Nos. 12 and 22 from the Court's list of pending motions.

Dated:

_____

Chief Judge

BY ECF TO ALL COUNSEL

10